IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| SERGIA DELGADO | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No._____ |
| | § | JURY DEMANDED |
| UHS OF LAKESIDE, LLC, | § | |
| d/b/a LAKESIDE BEHAVIORAL | § | |
| HEALTH SYSTEM | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

COMES THE PLAINTIFF, **SERGIA DELGADO**, filing this Complaint against the Defendant, **UHS OF LAKESIDE, LLC, d/b/a LAKESIDE BEHAVIORAL HEALTH SYSTEM**. She shows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, SERGIA DELGADO, is a citizen and resident of Shelby County, Tennessee.

2.      Defendant, UHS OF LAKESIDE, LLC, d/b/a LAKESIDE BEHAVIORAL HEALTH SYSTEM, is a company operating in Shelby County, Tennessee where it employed the Plaintiff.

3.      This Court has subject matter jurisdiction under 28 U.S.C. §1331

and Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) et. seq.

4.      Venue in this Western District of Tennessee, Eastern Division, is

proper pursuant to 28 U.S.C. § 1391, because the Defendant was either doing

business in this district or resides in this district, and a substantial part of

the events or omissions giving rise to this action occurred in this district.

5.      Plaintiff timely filed a charge of discrimination with the Equal

Employment Opportunity Commission.  She received her Right to Sue on or

about September 30, 2011.  She has timely commenced this action within the

ninety (90) days thereafter.

## FACTUAL BASES FOR SUIT

6.      Defendant employed Plaintiff, a female, as a "community

counselor" with a beginning date of work of August 16, 2008.  Following an

injury at work, in July of 2009, Defendant placed Plaintiff in its security

office.

7.      There, Plaintiff was supervised by a male, the head of security.

8.      Defendant provides behavioral health and addictive disease

serves.  Its community of patients include the severely addicted and

sometimes violent persons.  Such persons would be searched and various

types of contraband would be seized and held by security.  The contraband

included, *inter alia,* knives ("sharps") and offensive pornographic images and videos.

9. Defendant's head of security retained the pornography in his office. Believing them funny, titillating, or sometimes just perverse, he would frequently show them to Plaintiff despite her objections. He would say, for example, "here's one you would enjoy," or "look at this one," or spend time openly looking at the material. Accompanying this behavior, the head of security began leering at Plaintiff and stating that he wanted her.

10. This conduct was not an isolated or infrequent behavior, but a common one, occurring dozens of times in 2009 and 2010.

11. Plaintiff was deeply disturbed by these images. She did not find them funny, titillating or amusing but, instead, deeply offensive, unwelcome, and sometimes shocking.

12. Plaintiff did make complaints to superiors within Defendant's company. She requested to be separated from the head of security. However, these superiors alternately stated that Plaintiff was being "silly," that such contraband was just part of the job, or dismissed the issue out of hand.

13. Defendant eventually placed Plaintiff on a medical leave of absence in March of 2010. By this time, Plaintiff was having difficulty coping in the workplace.

14.    Upon information and belief, despite Plaintiff's complaints, Defendant took no action against the head of security.

15.    In April of 2010, when Plaintiff went to retrieve her belongings from work, Defendant's head of security again leered at Plaintiff and again stated he wanted her.  This frightened Plaintiff because she was uncertain of his intentions.

16.    While on the leave of absence, Plaintiff suffered nightmares, rumination and obsessive thoughts about the sexual images and what the head of security might be wanting to do to her.  She heard rumors that the person in the position before her, also a woman, had suffered assault by a superior (though by a different person than the current head of security).

17.    When Plaintiff eventually sought a return to active work, on or about October of 2010, Defendant informed Plaintiff that she would <u>have</u> to be placed with the same head of security.  Due to the sexual harassment she experienced with that person, Plaintiff was physically and mentally unable to return to that position.

18.    Defendant has taken no remedial action, to this date, to afford Plaintiff a return to active work and to separate Plaintiff from the head of security.

19.    Due to the harassment, Plaintiff has suffered emotional distress

including depression, sleep difficulties, nightmares, regular crying spells, and coping difficulties.

20.    As damages, Plaintiff seeks her lost wages (back pay and front pay), compensatory damages for emotional harm, and punitive damages for intentional indifference.  She seeks her attorneys fees and costs.

## CAUSES OF ACTION

21.    Based upon the foregoing facts, Plaintiff brings the following causes of action under Title VII against Defendant:

   **A.    Title VII.  Sexual Harassment; and**

   **B.    Title VII.  Retaliation.**

22.    Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer this Complaint, that Plaintiff be Awarded all compensatory and punitive damages available, any other equitable relief, wage and benefit losses, her attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which she may be entitled.

Respectfully submitted,


**GILBERT RUSSELL McWHERTER PLC**

 /s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
Jonathan L. Bobbitt (TN Bar No. 023515)
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jbobbitt@gilbertfirm.com
jgilbert@gilbertfirm.com

ATTORNEYS FOR PLAINTIFF